**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 13**

Docket No. DE-0353-15-0381-I-1

**Roseanne H. Cronin,**

**Appellant,**

**v.**

**United States Postal Service,**

**Agency.**

May 24, 2022

Roseanne H. Cronin, Larkspur, Colorado, pro se.

Brian J. Odom, Esquire, Denver, Colorado, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision that dismissed for lack of jurisdiction her claim that the agency arbitrarily and capriciously denied her restoration as a partially recovered employee. For the reasons set forth below, we AFFIRM the initial decision as MODIFIED to clarify the basis for our finding that the Board lacks jurisdiction over this appeal.

## BACKGROUND

¶2      The agency formerly employed the appellant as a City Carrier at the Castle Rock Post Office in Castle Rock, Colorado. Initial Appeal File (IAF), Tab 11 at 10. On December 21, 1999, she suffered an injury to her right

shoulder, for which the Office of Workers' Compensation Programs (OWCP) accepted her claim on March 22, 2000. *Id.* at 321. On January 7, 2002, she suffered an injury to her left shoulder, and OWCP accepted her claim for that injury on March 14, 2002. *Id.* at 206. She received OWCP benefits for scattered periods from 2000 to 2004. *Id.* at 107, 233, 286.

¶3 At some point following her compensable injuries, the appellant began working in a series of temporary limited-duty assignments. In March 2008, she accepted an assignment to a Modified Letter Carrier position in Castle Rock. *Id.* at 280-81. She accepted a limited-duty assignment as an Acting Supervisor of Customer Service effective May 3, 2010. *Id.* at 274-75.[1] In November 2013, she accepted a temporary directed assignment to a Supervisor of Customer Service position. *Id.* at 61. That assignment was initially only for a few weeks, *id.*, but it was later extended until May 16, 2014, *id.* at 231.

¶4 On November 26, 2013, the agency requested updated medical information from the appellant's physician. *Id.* at 252. By letter dated January 31, 2014, the agency requested that the appellant have her treating physician complete and return a Form CA-17, Duty Status Report. IAF, Tab 1 at 7. On March 25, 2014, the appellant's treating physician completed two CA-17s, one for each shoulder injury, permitting her to work with restrictions. *Id.* at 8-9. The appellant asserts that on July 11, 2014, she told the agency that she no longer wished to be a supervisor.[2] IAF, Tab 4 at 4. By letter dated July 14, 2014, the agency advised the appellant that it had searched for alternative work in all crafts and on all tours

---

[1] The appellant's May 3, 2010 limited-duty assignment was to run until October 30, 2010. IAF, Tab 11 at 274. Whether the appellant continued in that assignment or received a different limited-duty assignment upon its expiration is unclear.

[2] There is nothing in the record showing the appellant's assignment after May 16, 2014. However, it appears from the appellant's assertion that she remained in some type of supervisory assignment until at least July 11, 2014.

within the local commuting areas, and had found no work compatible with the medical restrictions described in the March 25, 2014 CA-17s. IAF, Tab 11 at 43. The appellant requested sick leave, effective July 12, 2014, citing "no work available," and the agency approved her request. IAF, Tab 7 at 6. Her last day in pay status was October 23, 2014. IAF, Tab 11 at 10.

¶5  On November 25, 2014, the appellant filed a claim for disability compensation with OWCP for the period from October 18 through November 14, 2014, and submitted the March 25, 2014 CA-17s in support of her claim. *Id.* at 11-12. OWCP found that evidence insufficient, and on January 14, 2015, OWCP issued a formal decision disallowing the appellant's claim. *Id.* Meanwhile, the Office of Personnel Management (OPM) approved the appellant's application for disability retirement benefits and she retired effective January 2, 2015. *Id.* at 10.

¶6  On February 25, 2015, the appellant filed a Board appeal alleging that her retirement was involuntary. *Cronin v. U.S. Postal Service*, MSPB Docket No. DE-3443-15-0223-I-1. During the course of that appeal, the appellant filed an additional pleading, dated May 13, 2015, in which she alleged that she was partially recovered from a work-related injury and that the agency had violated her restoration rights. IAF, Tab 1. The administrative judge docketed that pleading as the initial appeal in this case, and apprised the appellant of the requirements for establishing Board jurisdiction over a restoration appeal brought under 5 C.F.R. § 353.304(c).[3]  IAF, Tab 2.

---

[3] Shortly thereafter, on May 20, 2015, the administrative judge dismissed the involuntary retirement appeal for lack of jurisdiction, based on her finding that the appellant did not belong to any of the categories of postal employees who have been extended chapter 75 appeal rights pursuant to 39 U.S.C. § 1005(a). *Cronin v. U.S. Postal Service*, MSPB Docket No. DE-3443-15-0223-I-1, Initial Decision (May 20, 2015). Neither party filed a petition for review of that initial decision, which became final on June 24, 2015. To the extent the appellant's petition for review in this case may be intended as a request to reopen her involuntary retirement appeal, her request is

¶7    Subsequently, on April 11, 2016, OWCP issued a reconsideration decision vacating its January 14, 2015 decision and awarding the appellant compensation for the period from October 18 through November 14, 2014, in connection with her January 7, 2002 injury.  IAF, Tab 13 at 4-6.  The appellant supplemented the record in the instant appeal with a copy of that decision and a Board appeal form. IAF, Tab 13 at 4-6, Tab 14 at 1-5.  She reiterated her previous request for a hearing.  IAF, Tab 3 at 3, Tab 14 at 2.

¶8    Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 17, Initial Decision (ID).  The administrative judge found that the appellant had made nonfrivolous allegations that she was absent from her position due to a compensable injury, that she had partially recovered, and that the agency had denied her request for restoration.  ID at 5-7.  However, she further found that the appellant failed to nonfrivolously allege that the agency acted arbitrarily and capriciously in denying her restoration.  ID at 7-12.  Finally, the administrative judge found that the Board lacked jurisdiction over the appellant's claims of disability discrimination absent an otherwise appealable action.  ID at 12.

¶9    In her petition for review, the appellant contends that the agency arbitrarily and capriciously denied her request for reasonable accommodation when it required her to submit a CA-17, and that she could have established her discrimination claims had she been granted the hearing she requested.  Petition for Review (PFR) File, Tab 1 at 3-6.  The agency has filed a response in opposition to the petition for review.  PFR File, Tab 4.

---

denied.  *See* 5 C.F.R. § 1201.118 (providing that the Board will exercise its discretion to reopen an appeal only in unusual or extraordinary circumstances and generally within a short period of time after the decision becomes final).

ANALYSIS

<u>To establish jurisdiction over a restoration appeal under 5 C.F.R. § 353.304(c), an appellant must, inter alia, make a nonfrivolous allegation that the agency arbitrarily and capriciously denied restoration.</u>

¶10     The Federal Employees' Compensation Act (FECA) provides, inter alia, that Federal employees who suffer compensable injuries enjoy certain rights to be restored to their previous or comparable positions. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 9 (2016); *see* 5 U.S.C. § 8151(b). Congress has explicitly granted OPM the authority to issue regulations governing the obligations of employing agencies in this regard. 5 U.S.C. § 8151(b). Pursuant to this authority, OPM has issued regulations requiring agencies to make certain efforts toward restoring employees with compensable injuries to duty, depending on the timing and extent of their recovery. 5 C.F.R. § 353.301; *see Smith v. U.S. Postal Service*, 81 M.S.P.R. 92, ¶ 6 (1999).

¶11     The regulation at 5 C.F.R. § 353.301(d) concerns the restoration rights granted to "partially recovered" employees, defined in 5 C.F.R. § 353.102 as injured employees who, "though not ready to resume the full range" of their regular duties, have "recovered sufficiently to return to part-time or light duty or to another position with less demanding physical requirements." Section 353.301(d) requires agencies to "make every effort to restore in the local commuting area, according to the circumstances in each case, an individual who has partially recovered from a compensable injury and who is able to return to limited duty." This means, "[a]t a minimum," treating individuals who have partially recovered from a compensable injury substantially the same as other disabled[4] individuals under the Rehabilitation Act, as amended. *Id.*; *see* 29 U.S.C. § 794. The Board has interpreted the regulation to require that an agency must at least search within the local commuting area for vacant positions

---

[4] The regulation anachronistically refers to "handicapped" individuals.

to which it can restore a partially recovered employee and to consider her for any such vacancies. *Sanchez v. U.S. Postal Service*, 114 M.S.P.R. 345, ¶ 12 (2010).[5]

¶12       Although 5 U.S.C. § 8151 does not itself provide for an appeal right to the Board, the regulation at 5 C.F.R. § 353.304 provides Board appeal rights to individuals affected by restoration decisions under 5 C.F.R. § 353.301. As to partially recovered employees, the regulation provides that a partially recovered employee "may appeal to [the Board] for a determination of whether the agency is acting arbitrarily and capriciously in denying restoration." 5 C.F.R. § 353.304(c). The Board's own regulations in turn provide that, to establish jurisdiction over an appeal arising under 5 C.F.R. § 353.304, an appellant must make nonfrivolous allegations regarding the substantive jurisdictional elements. 5 C.F.R. § 1201.57(a)(4), (b). Accordingly, to establish Board jurisdiction over a restoration claim as a partially recovered employee, the appellant must make nonfrivolous allegations that:

> (1) she was absent from her position due to a compensable injury;
>
> (2) she recovered sufficiently to return to duty on a part-time basis, or to return to work in a position with less demanding physical requirements than those previously required of her;
>
> (3) the agency denied her request for restoration; and
>
> (4) the denial was arbitrary and capricious.

*Hamilton v. U.S. Postal Service*, 123 M.S.P.R. 404, ¶ 12 (2016).

---

[5] Although the Rehabilitation Act may in some cases require an agency to search beyond the local commuting area, we have found that, read as a whole, section 353.301(d) requires only that an agency search within the local commuting area, and that the reference to the Rehabilitation Act means that, in doing so, it must undertake substantially the same effort that it would exert under that Act when reassigning a disabled employee within the local commuting area. *Sanchez*, 114 M.S.P.R. 345, ¶ 18.

¶13     Here, it is undisputed that the appellant has satisfied the first three jurisdictional elements.[6] We take this opportunity to clarify our analysis of the fourth jurisdictional element.

For purposes of establishing jurisdiction under 5 C.F.R. § 353.304(c), a denial of restoration is "arbitrary and capricious" if, and only if, the agency failed to meet its obligations under 5 C.F.R. § 353.301(d).

¶14     The jurisdictional standard established by 5 C.F.R. § 353.304(c) "reflects the limited substantive right enjoyed by partially recovered employees." *Bledsoe v. Merit Systems Protection Board*, 659 F.3d 1097, 1103 (Fed. Cir. 2011), *superseded in part by regulation on other grounds as stated in Kingsley*, 123 M.S.P.R. 365, ¶ 10. Whereas employees who fully recover from a compensable injury within a year have an "unconditional right to restoration under 5 C.F.R. § 353.301(a) and 5 U.S.C. § 8151(b)(1)," *Bledsoe*, 659 F.3d at 1103, a partially recovered employee does not have such an unconditional right. Rather, the agency only is obliged to "make every effort to restore" a partially recovered employee "in the local commuting area" and "according to the

---

[6] The first jurisdictional element is satisfied because OWCP issued a reconsideration decision awarding the appellant compensation for at least some portion of her absence. IAF, Tab 13 at 4-6; *see Manning v. U.S. Postal Service*, 118 M.S.P.R. 313, ¶ 9 (2012) (holding that when OWCP reverses an earlier adverse decision, an appellant may rely on the more recent favorable decision in making a nonfrivolous allegation that her absence was due to a compensable injury). Regarding the second element, the appellant's allegation of partial recovery is nonfrivolous in light of OWCP's acceptance of medical documentation identifying certain physical restrictions that would permit her to return to work at the agency. IAF, Tab 13 at 6; Tab 1 at 8-9. As to the third jurisdictional element, it is undisputed that, after the appellant submitted CA-17s indicating her availability to work with restrictions, the agency determined that no craft positions consistent with her medical restrictions were available. IAF, Tab 11 at 43; Tab 7 at 5. Although the appellant previously had been restored to a variety of modified-duty assignments, the Board has held that wrongfully terminating a restoration previously granted may constitute a denial of restoration within the meaning of 5 C.F.R. § 353.304(c). *Brehmer v. U.S. Postal Service*, 106 M.S.P.R. 463, ¶ 9 (2007). Although the record is not entirely clear, we assume for purposes of this decision that the appellant continued in her supervisory assignment until the agency sent her home in July 2014, due to a lack of available work.

circumstances in each case." *Bledsoe*, 659 F.3d at 1103 (quoting 5 C.F.R. § 353.301(d)). The Board appeal right under 5 C.F.R. § 353.304(c) is likewise conditional: "[b]ecause partially recovered employees do not have an unconditional *right* to restoration, they do not have the right to appeal every *denial* of restoration." *Bledsoe*, 659 F.3d at 1103 (emphasis in original). Accordingly, our reviewing court has found the arbitrary and capricious standard of 5 C.F.R. § 353.304(c) "limits jurisdiction to appeals where the substantive rights of the partially recovered [appellants] under section 353.301(d) are actually alleged to have been violated." *Id.*; *cf. Palmer v. Merit Systems Protection Board*, 550 F.3d 1380, 1383 (Fed. Cir. 2008) (holding that a partially recovered employee alleging improper restoration "may appeal only on the limited grounds enumerated in [section 353.304(c)]"). In other words, for purposes of the fourth jurisdictional element, a denial of restoration is "rendered arbitrary and capricious by [an agency's] failure to perform its obligations under 5 C.F.R. § 353.301(d)." *Bledsoe*, 659 F.3d at 1104.

Section 353.301(d) does not itself require an agency to provide restoration rights beyond the minimum requirement of the regulation.

¶15     In *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400, ¶¶ 12-16 (2012), *superseded in part by regulation on other grounds as stated in Kingsley*, 123 M.S.P.R. 365, ¶ 10, the Board considered whether an agency's obligations under 5 C.F.R. § 353.301(d) might exceed the "minimum" requirement of the regulation, i.e., to search the local commuting area for vacant positions to which the partially recovered employee can be restored and to consider her for such positions. The appellants in *Latham* alleged that the agency had arbitrarily and capriciously discontinued their modified assignments in violation of internal agency rules, set forth in the Employee and Labor Relations Manual (ELM), concerning restoring partially recovered employees. *Latham*, 117 M.S.P.R. 400, ¶¶ 2-3, 5. Under the pertinent provisions of the ELM and its accompanying handbook, the agency had agreed to restore partially recovered individuals to duty

in whatever tasks are available regardless of whether those tasks comprise the essential functions of an established position. *Id.*, ¶¶ 3, 26. Thus, the agency had assumed obligations beyond the "minimum" requirement of 5 C.F.R. § 353.301(d). The Board noted that 5 C.F.R. § 353.301(d) was silent as to whether an agency may voluntarily assume restoration obligations beyond the "minimum" requirements of that section and, if so, whether such obligations are enforceable by the Board under 5 C.F.R. § 353.304(c). *Latham*, 117 M.S.P.R. 400, ¶ 12.

¶16        To help resolve the question, the Board sought and obtained an advisory opinion from OPM. *Id.* In its advisory opinion, OPM expressed the view that the phrase "at a minimum," as it appears in 5 C.F.R. § 353.301(d), anticipates that an agency may adopt additional agency-specific requirements pertaining to restoring partially recovered individuals, and that the regulation requires "compliance with an agency's own rules as well as the provisions of OPM regulation, at least where they confer additional protections or benefits on the employee." *Id.*, ¶ 13 (quoting OPM's advisory opinion in *Latham*). OPM further advised:

> It is OPM's opinion that if the Postal Service established a rule that provided the partially recovered employees with greater restoration rights than the "minimum" described in the OPM regulations, the Postal Service is required to meticulously follow that rule. To do otherwise would be arbitrary and capricious within the meaning of OPM's regulation conferring jurisdiction on the Board at section 353.304(c).

*Id.* In a split decision, the majority of the Board found that OPM's interpretation of its regulation was entitled to deference under *Bowles v. Seminole Rock & Sand Company*, 325 U.S. 410, 414 (1945), because it was consistent with the language of the regulation and not plainly erroneous. *Latham*, 117 M.S.P.R. 400, ¶ 13; *see Auer v. Robbins*, 519 U.S. 452, 461 (1997) (stating that an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation) (citations and quotations omitted), *superseded in part on other grounds by regulation as stated in Crowe v. Examworks, Inc.*,

136 F. Supp. 3d 16, 28 n.8 (D. Mass. 2015). Thus, the Board concluded that it has jurisdiction over appeals concerning the denial of restoration to partially recovered individuals when the denial results from the agency violating its own internal rules. *Latham*, 117 M.S.P.R. 400, ¶ 13. In dissent, then-Member Mary M. Rose expressed her view that OPM's regulations could not be interpreted reasonably as granting the Board authority to adjudicate substantive entitlements conferred by internal agency rules concerning partially recovered employees. *Id.* (dissenting opinion of Member Rose), ¶¶ 8-17. One basis for this dissenting opinion was that the Board could enforce internal agency restoration entitlements that go beyond Federal law and OPM regulations only if OPM was permitted to redelegate the authority Congress granted it to promulgate restoration regulations, which Congress did not authorize OPM to do. *Id.*, ¶¶ 15-17.

¶17        We are now persuaded by this dissenting opinion that, contrary to the majority opinion in *Latham,* OPM's interpretation of its regulation at 5 C.F.R. § 353.301(d) was plainly erroneous and therefore not entitled to deference under *Seminole Rock* and *Auer*.[7] Were the regulation interpreted as OPM suggested in

---

[7] We assume for purposes of our analysis here that deference under *Seminole Rock* and *Auer* applies. The Supreme Court recently addressed the proper application of such deference in *Kisor v. Wilkie*, ___ U.S. ___, 139 S. Ct. 2400 (2019). Although a majority of the Court in *Kisor* declined to overrule *Seminole Rock* and *Auer*, it emphasized the limits on the deference that should be extended to agency interpretations of their own regulations. In particular, the Court held that "*Auer* deference is not the answer to every question of interpreting an agency's rules," and that deference should only be a consideration if a regulation is "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor*, 139 S. Ct at 2414. The Court further held that even where such genuine ambiguity exists, deference should be given only when "the character and context of the agency interpretation entitles it to controlling weight." *Id.* at 2416. If the Board in *Latham* had the benefit of the Court's guidance in *Kisor,* it may not have deferred to OPM's interpretation in the first instance.

its advisory opinion,[8] OPM would not have the final say in determining what obligations its own regulation imposed. Rather, an employing agency would have free rein to determine the scope of its obligation under 5 C.F.R. § 353.301(d)—and, by extension, FECA itself—with the sole proviso that it provide at least the "minimum" rights described in the regulation. Thus, through its advisory opinion in *Latham*, OPM effectively claimed for itself the authority to redelegate a significant portion of its statutorily granted rulemaking authority to outside parties.[9]

¶18    However, the statute refers only to "regulations issued by [OPM]," and says nothing about OPM's authority to redelegate its rulemaking authority to an outside party. 5 U.S.C. § 8151(b); *see Latham*, 117 M.S.P.R. 400 (dissenting opinion of Member Rose), ¶ 15. Generally, "[w]hen a statute delegates authority to a [F]ederal officer or agency, subdelegation to a subordinate [F]ederal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *United States Telecom Association v. Federal Communications Commission*, 359 F.3d 554, 565 (D.C. Cir. 2004). By contrast, "there is no such presumption covering [re]delegations to outside parties." *Id.*

---

[8] The validity of 5 C.F.R. § 353.301(d) itself is not before us. Rather, we proceed on the assumption that the regulation, if permissibly interpreted, is valid and within the scope of OPM's authority under 5 U.S.C. § 8151(b).

[9] We use the term "redelegation" to distinguish an agency's delegation of authority to an outside entity from subdelegation to an agency's own officials or internal components. *See* Jason Marisam, *The Interagency Marketplace*, 96 Minn. L. Rev. 886, 891-97 (2012). Redelegation also differs from situations in which an agency seeks outside input, such as fact-gathering, advice-giving, or establishing a reasonable condition for granting agency approval, but retains final decision-making authority. *United States Telecom Association v. Federal Communications Commission*, 359 F.3d 554, 566 (D.C. Cir. 2004); *see, e.g.*, *Louisiana Forestry Association v. U.S. Department of Labor*, 745 F.3d 653, 671-73 (3d Cir. 2014) (finding that the Department of Homeland Security (DHS) had not redelegated to the Department of Labor (DOL) authority to decide H-2B petitions from employers that were required to obtain DOL certification prior to petitioning DHS for the admission of such workers but DHS retained final authority to approve or disapprove the petitions).

Rather, "[re]delegations to outside parties are assumed to be improper absent an affirmative showing of congressional authorization." *Id.* (citing *Shook v. District of Columbia Financial Responsibility & Management Assistance Authority*, 132 F.3d 775, 783-84 & n.6 (D.C. Cir. 1998)); *see Latham*, 117 M.S.P.R. 400 (dissenting opinion of Member Rose), ¶ 15 (quoting *United States Telecom*, 359 F.3d). As the D.C. Circuit explained, this distinction rests on a fundamental policy consideration:

> When an agency delegates authority to its subordinate, responsibility—and thus accountability—clearly remain with the [F]ederal agency. But when an agency delegates power to outside parties, lines of accountability may blur, undermining an important democratic check on government decision-making. Also, delegation to outside entities increases the risk that these parties will not share the agency's national vision and perspective, and thus may pursue goals inconsistent with those of the agency and the underlying statutory scheme. In short, [re]delegation to outside entities aggravates the risk of policy drift inherent in any principal-agent relationship.

*United States Telecom*, 359 F.3d at 565-66 (citations and quotations omitted). This principle applies with equal force when, as in this case, the outside party is another Federal agency. *Id.* at 566 (finding that Federal agency officials may not redelegate their authority to outside entities, whether private or sovereign, "absent affirmative evidence" of their authority to do so); *cf. Shook*, 132 F.3d at 783-84 (finding that the Control Board, an agency of the District of Columbia Government, lacked authority to transfer its statutory oversight authority over the Board of Education to a Board of Trustees).

¶19    The Board's post-*Latham* cases confirm that, under the interpretation of OPM's regulations adopted by the majority in *Latham*, OPM has effectively redelegated its rulemaking authority to individual agencies. Most notably, since the Board decided *Latham*, the outcome of restoration appeals brought by U.S. Postal Service employees has often turned on whether the agency violated its

internal rules.[10]  *See, e.g.*, *Davis v. U.S. Postal Service*, 120 M.S.P.R. 122, ¶¶ 12-13 (2013) (finding a violation of restoration rights based on the agency's failure to comply with its ELM and handbook by searching for available tasks that did not necessarily comprise the essential functions of a position); *Davis v. U.S. Postal Service*, 119 M.S.P.R. 22, ¶¶ 5-9 (2012) (finding a violation of restoration rights under the ELM despite the fact that the agency complied with its minimum obligations under 5 C.F.R. § 353.301(d)).

¶20      We conclude that Congress has not authorized OPM to redelegate its rulemaking authority in the manner articulated in OPM's advisory opinion and approved by the majority in *Latham*.  This is not to say that an agency may not undertake restoration efforts beyond the minimum effort required by OPM under 5 C.F.R. § 353.301(d); indeed, the phrase "at a minimum" implies that an agency is free to do so.  However, an agency's failure to comply with self-imposed obligations, such as the ELM provisions concerning partially recovered employees at issue in this appeal, cannot itself constitute a violation of 5 C.F.R. § 353.301(d) such that a resulting denial of restoration would be rendered "arbitrary and capricious" for purposes of establishing Board jurisdiction under 5 C.F.R. § 353.304(c).  *Accord Smith v. Merit Systems Protection Board*, 813 F.2d 1216, 1218-19 (Fed. Cir. 1987) (stating that "[o]rdinarily a collective bargaining agreement cannot confer jurisdiction on the [B]oard if the employee would not otherwise have the right to appeal to the [B]oard."); *cf. Pogarsky v. Department of the Treasury*, 7 M.S.P.R. 196, 198 (1981) (finding that, while a collective bargaining agreement may grant

---

[10] A large percentage of the Board's restoration appeals are brought by employees of the U.S. Postal Service.  However, under the majority holding in *Latham*, to the extent other Federal agencies have internal restoration rules that impose greater obligations than 5 C.F.R. § 353.301(d) itself, the Board effectively would need to develop a separate body of law for each such agency based on the peculiarities of their internal rules.

procedural protections to probationary employees beyond those found in 5 C.F.R. part 315, the additional safeguards do not become extensions of those regulations or expand the appeal right under 5 C.F.R. § 315.806). Rather, to establish jurisdiction under 5 C.F.R. § 353.304(c), an appellant must, inter alia, make a nonfrivolous allegation that the agency failed to comply with the minimum requirement of 5 C.F.R. § 353.301(d), i.e., to search within the local commuting area for vacant positions to which it can restore a partially recovered employee and to consider her for any such vacancies. *Sanchez*, 114 M.S.P.R. 345, ¶ 12. The contrary holding of *Latham* and its progeny is hereby overruled.[11]

Claims of prohibited discrimination or reprisal for protected activity do not serve as independent means of showing that a denial of restoration was arbitrary and capricious for purposes of section 353.304(c).

¶21    The appellant alleged that the agency's denial of restoration was based on prohibited disability discrimination. IAF, Tab 1 at 5. In *Latham*, we suggested that a claim of unlawful discrimination or reprisal for protected activity could serve as an "alternative means" of showing that a denial of restoration was arbitrary and capricious. 117 M.S.P.R. 400, ¶ 58 n.27; *see Paszko v. U.S. Postal Service*, 119 M.S.P.R. 207, ¶ 15 (2013). This holding was incorrect because, as explained above, a denial of restoration is arbitrary and capricious for purposes of section 353.304(c) only if an agency fails to meet its obligation under section 353.301(d). *See Bledsoe*, 659 F.3d at 1103-04. Determining whether an agency met its obligation under section 353.301(d) will turn on whether it

---

[11] Cases citing *Latham* for the now-overruled holding include *Clark v. U.S. Postal Service*, 123 M.S.P.R. 466, ¶ 5 (2016), *aff'd per curiam*, 679 F. App'x 1006 (Fed. Cir. 2017); *Davis*, 120 M.S.P.R. 122, ¶¶ 11-12; *Davis*, 119 M.S.P.R. 22, ¶ 6; *Bennett v. U.S. Postal Service*, 118 M.S.P.R. 271, ¶ 11 (2012); *Coles v. U.S. Postal Service*, 118 M.S.P.R. 249, ¶ 17 (2012); *Richards v. U.S. Postal Service*, 118 M.S.P.R. 242, ¶ 6 (2012); and *Ashley v. U.S. Postal Service*, 118 M.S.P.R. 231, ¶ 7 (2012), *aff'd in part and vacated in part by Ashley v. U.S. Postal Service*, MSPB Docket No. AT-0353-11-0063-C-1, Final Order (Nov. 19, 2013).

"ma[d]e every effort" to restore a partially recovered employee "in the local commuting area" and "according to the circumstances in each case." If the agency makes the required effort but fails to find suitable work for the appellant, the denial of restoration is not arbitrary and capricious, and the agency's lack of success cannot be attributed to any improper motive on its part. If, on the other hand, the agency fails to make the effort required under section 353.301(d), the resulting denial of restoration is necessarily arbitrary and capricious, and no further analysis is required. While an agency's failure to comply with section 353.301(d) may well be the result of prohibited discrimination or reprisal for protected activity, whether that is so is immaterial to the question of whether denying restoration in a particular instance is arbitrary and capricious for purposes of section 353.304(c).[12]

The appeal is dismissed for lack of jurisdiction.

¶22        Although the administrative judge did not have the benefit of this decision, she nonetheless correctly notified the appellant that she could establish the fourth jurisdictional element under 5 C.F.R. § 353.304(c) by making a nonfrivolous allegation that the denial of restoration was arbitrary and capricious due to the agency's failure to comply with 5 C.F.R. § 353.301(d). IAF, Tab 2 at 3-4; *see Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643-44 (Fed. Cir. 1985) (holding that an appellant must receive explicit information on what is required to establish an appealable jurisdictional issue). The appellant has not alleged, and there is nothing in the record to suggest, that the agency failed to comply with the minimum requirements of 5 C.F.R. § 353.301(d) when it denied her restoration as a partially recovered employee. Accordingly, we find that the

---

[12] We do not decide at present whether and how the Board should address discrimination and reprisal claims in the event jurisdiction under 5 C.F.R. § 353.304(c) has been independently established. *See Latham*, 117 M.S.P.R. 400, ¶ 58 n.27 (observing that the concept of an "affirmative defense" fits better in matters such as adverse action appeals when the agency bears the burden of proof on the merits).

Board lacks jurisdiction over this appeal under 5 C.F.R. § 353.304(c).  Absent an otherwise appealable action, we also lack jurisdiction to address the appellant's claim of disability discrimination.  *See McDonnell v. Department of the Navy*, 84 M.S.P.R. 380, ¶ 11 (1999).[13]

## ORDER

¶23     This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[14]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[13] The fact that we lack jurisdiction to address the appellant's discrimination claim does not mean that she is without recourse for her claim.  The Equal Employment Opportunity Commission (EEOC) has held in a class action appeal, which did not implicate OPM's restoration regulations at issue in this appeal and which the EEOC described as a nonmixed case, that the agency had discriminated against disabled employees who were injured on duty and assessed under the agency's National Reassessment Program between May 2006, and July 2011.  *See Velva B. v. U.S. Postal Service*, EEOC Appeal Nos. 0720160006 & 0720160007, 2017 WL 4466898 (Sept. 25, 2017), *request for reconsideration denied*, Request Nos. 0520180094 & 0520180095, 2018 WL 1392289 (Mar. 9, 2018).

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:


/s/

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.